UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREEPB.ORG, | Case No. 3:12-cv-0044-GPC-MDD |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| CITY OF SAN DIEGO, | **[ECF NO. 16]** |
| Defendant. | |

## INTRODUCTION

Plaintiff challenges a provision of San Diego Municipal Code section 63.0103 – the so-called summer moratorium – that bars the grant of all space reservations for special event permits in Mission Bay Park during certain months of the year without a waiver.

Plaintiff filed its initial complaint on January 6, 2012. (ECF No. 1.) Prior to transfer to this Court, Judge Anello granted Defendant's Motion to Dismiss Plaintiff's initial complaint on July 25, 2012. (ECF No. 14.) Plaintiff thereafter filed its First Amended Complaint. (ECF No. 15.)

Before the Court is Defendant's Motion to Dismiss Plaintiff's First Amended Complaint. (ECF No. 16.) Plaintiff has filed an opposition to the Motion to Dismiss, (ECF No. 20), and Defendant has filed a reply, (ECF No. 21). After considering the record in this matter and the parties' submissions, and for the reasons that follow, the Court **GRANTS** Defendant's Motion to Dismiss.

/ / /

**BACKGROUND**[1]

The City of San Diego is the eighth largest city in the country, with 1.3 million residents and many more millions in visitors each year.  San Diego encompasses fifty-two individual communities and more than one hundred identified neighborhoods within those communities.  Among these neighborhoods, some of the more densely-populated communities are those along San Diego's beaches.  Mission Bay Park is one such community and contains many parks, playgrounds, beaches, and other popular recreation areas.  During the summer months, tourists from the County of San Diego, neighboring counties, neighboring states, and many places far away visit San Diego's beach communities.  The resulting challenge for the City is maintaining the balance between managing the large crowds that invariably overwhelm San Diego's beaches and surrounding parks every summer and allowing special events access to beaches and parks.

### A.   General Permit and Special Event Permit Requirements

In general, San Diego Municipal Code section 63.0102 regulates the use of public parks and beaches with the intent to "regulate and prohibit certain activities . . . in the interest of protecting the enjoyment and safety of the public . . . as well as the natural resources" of the City.  San Diego Mun. Code § 63.0102(a).  Specifically, this section prohibits the gathering of groups of fifty or more persons without first obtaining a permit or permission from the City Manager.  Id. § 63.0102(b)(24).  Other activities in parks and beaches that require a permit or approval include discharging fireworks, destruction of plants in City parks, sale of merchandise, solicitation for commercial purposes, and concerts and other performances.  Id. § 63.0102(b)(3)-(4), (b)(13)-(15).  To obtain the City Manager's permission to conduct any of the above activities, one must simply submit an application at least ten days before the date of the activity and state the date, time, location, description, and participants of the activity.  Id. § 63.0103(a)-(b).  The SDMC requires the City Manager to issue a "permit, permission, or consent" within three days of the application "if there is capacity for the proposed activity."  Id. § 63.0103(c)-(d).

If the beach or park activity qualifies as a "special event," however, the process is more

---

[1] Taken and adapted from Judge Anello's July 25, 2012 Order Granting Motion to Dismiss. (ECF No. 14.)

involved, and an event organizer must obtain both a special event permit, which requires a "reservation of space." Id. § 63.0103(d)(1). The SDMC defines a "special event," in part, as "any organized assemblage of seventy-five (75) or more Persons at any public beach or public park which is to gather for a common purpose under the direction and control of a Person." Id. § 22.4003. Examples include "concerts, parades, circuses, fairs, festivals, block parties, mass participation sports . . . , or spectator sports . . . ." Id. Furthermore, "it is unlawful for any person to consume any alcoholic beverage at any time, upon all public beaches" unless, among other things, the City Manager has issued a special event permit. Id. § 56.54(f)-(g).

Certain activities in parks and beaches are exempt from the special event permit requirement above. For example, lawful picketing on sidewalks, certain fireworks displays, and "Demonstrations" do not require a special event permit. Id. § 22.4005(c). The Municipal Code defines "Demonstration" as any "formation, procession or assembly" of more than seventy-five persons, who meet "for the purpose of Expressive Activity." Id. § 22.4003. The SDMC further defines "Expressive Activity" as "conduct, the sole or principal object of which is the expression, dissemination or communication by verbal, visual, or auditory means of opinions, views or ideas and for which no fee or donation is charged or required as a condition of participation in or attendance at such activity." Id. Thus, if an event is held "for the purpose of Expressive Activity," the SDMC does not require a special event permit or space reservation to hold the event.

**B.     The Summer Moratorium**

As explained above, San Diego is a popular tourist destination in the summer months. In particular, San Diego's beach communities experience a sharp and sustained increase of visitation and usage. To manage the issues attendant to this sharp increase in citywide visitation, if the special event falls during the time period between Memorial Day and Labor Day and will be held in certain parks or beaches, including Mission Bay Park, additional restrictions apply to those who seek special event permits. See generally id. § 63.0103(d)(A). Specifically, the longstanding so-called "summer moratorium" was for many years an uncodified practice of suspending the issuance of the space reservations required to obtain special events permits in certain parks, including Mission Bay Park, during the summer months. In 2011, the City amended the SDMC and codified the summer

1   moratorium.

2        Effective December 14, 2011, San Diego City Ordinance 20111 amended section 63.0103 and

3   formally added the summer moratorium to the SDMC.  As codified, the summer moratorium is a

4   general ban on all grants of space reservations from the "Saturday prior to Memorial Day . . . through

5   Labor Day."  San Diego Mun. Code § 63.0103(d)(1)(A).  The moratorium is in effect in Balboa Park,

6   Mission Bay Park, Presidio Park, and the Shoreline Parks, which are defined as "those parks

7   contiguous to the shoreline or beach in the communities in Ocean Beach, Mission Beach, Pacific

8   Beach, and La Jolla."  Id.

9        Despite this general ban on granting space reservations in certain communities, a select few

10  events are exempt from the moratorium.  In Mission Bay Park, where Plaintiff wishes to hold its event,

11  three long-running events are exempt: the Old Mission Bay Athletic Club's yearly Over the Line

12  tournament, the yearly Rock and Roll Marathon, and the yearly Kai Elua outrigger canoe race.  Id. §

13  63.0103(d)(1)(A)(ii).  All other event organizers who wish to secure a special event permit and space

14  reservation in Mission Bay Park during the summer moratorium must apply for a waiver from the

15  moratorium.

16       To secure a waiver, an applicant must submit a written request for waiver to the City Manager

17  at least 120 days from the date of the event.  Id. § 63.0103(d)(1)(B).  The waiver request must describe

18  the nature of the special event and explain why the City Manager should issue the waiver.  Id.  Within

19  ten days of the waiver request, the City Manager must "place the item on the next available agenda for

20  the appropriate park advisory committee."  Id.  Once the assigned park advisory committee votes on

21  the waiver request, the City Manager "shall issue a final decision" on the waiver within ten days of the

22  committee's vote.  Id.  Reading the summer moratorium and special events ordinances together, a

23  "Demonstration" is exempt from the summer moratorium because organizers of such events need not

24  obtain special events permits in the first place and therefore need not obtain a waiver from the summer

25  moratorium.

26      **C.**    **Plaintiff's First Amended Complaint**

27       In its First Amended Complaint ("FAC"), Plaintiff asserts three causes of action: Count 1

28  (Violation of First Amendment with Summer Moratorium), Count 2 (Violation of First Amendment

with Subjective Summer Moratorium Waiver, and Count 3 (Violation of Fourteenth Amendment with Summer Moratorium and Waiver Provision).

Plaintiff alleges it is a "San Diego-based community group dedicated to preserving freedom at local parks and beaches." Plaintiff claims the summer moratorium violates the First Amendment because it "effectively prevents Plaintiff from obtaining a reservation for the parks and beaches where its special event will be held and thus has the effect of preventing Plaintiff from obtain the requisite special event permits."

Plaintiff also claims the summer moratorium waiver process violates the First Amendment because it lacks (1) strict time limits, (2) objective criteria governing decisions on waiver requests, (3) a requirement that the City Manager articulate reasons for a denial, and (4) an appeal process.

In contrast to its original complaint, Plaintiff provides more specific allegations regarding the event it wishes to hold in Mission Bay Park. Plaintiff identifies the event as the "Beach Party," the purpose of which is to "celebrate San Diego's wonderful beaches and [the] freedom to assemble at the interface between land and sea" and "to promote [Plaintiff's] political views concerning the need to reform the policies and regulations governing the use of and access to San Diego's beach resources, especially Defendant's policies and regulations."

Plaintiff alleges that event organizers will educate the public regarding access to parks and beaches, engage in "expressive conduct (e.g., games, dancing, readings, and patriotic fireworks displays)," and answer questions from members of the public. Plaintiff alleges it intends to require participants to make a donation as a condition to participation and that it intends to sell alcoholic beverages to persons who are lawfully entitled to purchase it.

Plaintiff alleges that, on some date not alleged in its FAC, it submitted an application to hold the "Beach Party" in Mission Bay Park on August 25, 2012. Plaintiff alleges that Defendant informed Plaintiff that Defendant would take no action on the application unless Plaintiff obtained a waiver of the moratorium. Plaintiff alleges Defendant's refusal to take action was a "de facto denial" of its application and that, as a result of that "de facto denial," Plaintiff will be "unable to share its message with a beach-going audience during the Summer Moratorium." Plaintiff alleges it is thus "left with the untenable choice of having to hold the 'Beach Party' at a location other than a City beach."

1  Plaintiff alleges it is "informed and believes . . . that Defendant will not allow Plaintiff to hold

2  the 'Beach Party' . . . because Defendant wants to immunize itself and its officials from public

3  scrutiny."  Plaintiff further alleges it is "informed and believes . . . that Defendant has given [law

4  enforcement] instructions to ensure that Plaintiff and its members are cited and prosecuted if they

5  attempt to hold the 'Beach Party' . . . without a special event permit."  Plaintiff further alleges it is

6  "informed and believes . . . that Defendant's efforts to thwart Plaintiff in obtaining a permit for the

7  'Beach Party' . . . are in retaliation for Plaintiff's opposition to what is commonly known as the 'City-

8  Beach Alcohol Ban' . . . and Plaintiff's support of what is commonly known as 'Floatopia.'"  Plaintiff

9  provides that "the Alcohol Ban, as enacted by the voters as part of Proposition D in 2008, prohibits

10  the consumption of alcohol at city beaches unless a special event permit has been issued."

11  Regarding its Fourteenth Amendment claim, Plaintiff alleges the summer moratorium "is a

12  form of speaker-based and content-based discrimination."  Plaintiff alleges "there is no rational or

13  reasonable basis for the distinctions made in Ordinance no. O-20111 for exempting certain events and

14  their sponsors from the Summer Moratorium's waiver requirement."  Plaintiff alleges its "events also

15  took place prior to the establishment of the Summer Moratorium."  Plaintiff therefore alleges "there

16  is no meaningful difference between Plaintiff's special event and other special events during the

17  Summer Moratorium and for which a reservation may be obtained under SDMC Section

18  63.0103(d)(1)(A)."

19  **DISCUSSION**

20  **I.  Legal Standard**

21  A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a

22  complaint.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal is warranted under

23  Rule12(b)(6) where the complaint lacks a cognizable legal theory.  Robertson v. Dean Witter

24  Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984); see Neitzke v. Williams, 490 U.S. 319, 326 (1989)

25  ("Rule12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

26  Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to

27  plead essential facts under that theory.  Robertson, 749 F.2d at 534.  While a plaintiff need not give

28  "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief

above the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 545 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>,129 S. Ct. 1937, 1949 (2009) (quoting <u>Twombly</u>, 550 U.S. at 547).  A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>  In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." <u>Moss v. U.S. Secret Service</u>, 572 F.3d 962, 969 (9th Cir. 2009).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 129 S. Ct. at 1950.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party.  <u>Thompson v. Davis</u>, 295 F.3d 890, 895 (9th Cir. 2002); <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 337-38 (9th Cir. 1996).  Legal conclusions, however, need not be taken as true merely because they are cast in the form of factual allegations.  <u>Ileto v. Glock, Inc.</u>, 349 F.3d 1191, 1200 (9th Cir. 2003); <u>W. Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981).  When ruling on a motion to dismiss, a court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice.  <u>Lee v. Los Angeles</u>, 250 F.3d 668, 688-89 (9th Cir. 2001).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" <u>DeSoto v. Yellow Freight Sys., Inc.</u>, 957 F.2d 655, 658 (9th Cir. 1992) (quoting <u>Schreiber Distrib. Co. v. Serv-Well Furniture Co.</u>, 806 F.2d 1393, 1401 (9th Cir. 1986)).  In other words, where leave to amend would be futile, the Court may deny leave to amend.  <u>See</u> <u>Desoto</u>, 957 F.2d at 658.

**II.    Analysis**

Defendant moves to dismiss Plaintiff's FAC, arguing Plaintiff lacks Article III standing to

1  assert its First Amendment claims and that Plaintiff has, in any event, failed to state a claim under

2  either the First Amendment or the Fourteenth Amendment.

3      **A.      Standing to Assert Facial Challenge Under First Amendment**

4      Defendant argues that, because Plaintiff is asserting a facial challenge under the First

5  Amendment, "Plaintiff lacks Article III standing because Plaintiff cannot show that the ordinance

6  restricts any conduct that Plaintiff alleges is constitutionally protected."  Defendant asserts that

7  "[i]nstead, the ordinance restricts Plaintiff's 'Beach Party' event because it involves alcohol."  More

8  specifically, Defendant argues Plaintiff has not alleged facts showing that the challenged ordinance

9  would be enforced against Plaintiff for engaging in activities protected by the First Amendment.  That

10 is, Defendant argues Plaintiff has failed to establish a nexus between the ordinance and any

11 constitutionally protected activity.  Defendant asserts that if Plaintiff's event consisted only of

12 expressive activity, no special event permit would be required and thus no waiver of the moratorium

13 would be required.

14     In opposition, Plaintiff acknowledges that it has asserted a facial challenge to the summer

15 moratorium but  nonetheless argues it has standing to maintain this action.  Plaintiff argues "nothing

16 in this case justifies Defendant's approach of parsing out what it believes is constitutionally protected

17 conduct," as "[w]hat matters is whether the challenged ordinance has caused Plaintiff to modify its

18 speech in response to the permitting system in some way."  Plaintiff further asserts it has standing

19 because the ordinance "vests Defendant with unbridled authority to grany or deny a waiver request for

20 an event involving expressive conduct."

21     Plaintiff further asserts the only thing it "must show is that the challenged ordinance applies

22 to its conduct and 'must have a close enough nexus to expression, or to conduct commonly associated

23 with expression, to pose a real and substantial threat of the identified censorship risks.'"  As to a

24 nexus, Plaintiff appears to assert that a nexus between the ordinance and its event exists in that

25 Plaintiff seeks to hold its event in a public forum.

26     Plaintiff goes on to state that the event is partially a fundraiser, as Plaintiff intends to require

27 a donation.  Plaintiff therefore observes that its event is not covered under the definition of

28 "Expressive Activity" and thus is not considered a "Demonstration" in the context of whether its event

is excepted from the special event permit requirement.  Plaintiff also states that its event will include alcohol.  In that vein, however, Plaintiff concedes that "[t]he consumption of alcoholic beverages at San Diego beaches is prohibited except when done as part of an event for which a "special event" permit has been issued.  (ECF No. 20 at 10 n.5.)

In reply, Defendant reiterates that the challenged ordinance would not be enforced against Plaintiff for engaging in activities protected by the First Amendment but would instead be enforced against Plaintiff because its event involves the use of alcohol.  Defendant argues that Plaintiff is merely attempting to bootstrap a First Amendment issue to what is otherwise constitutionally regulated conducted.  Defendant argues that, under Plaintiff's theory, an event organizer could avoid health and safety regulations attendant to a chili cook-off if the organizer planned also to present a short speech on taxing policies.  That is, Defendant argues that Plaintiff is attempting an end-run attack on the City's alcohol regulations.

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies."  U.S. Const. Art. III § 2.  "[S]tanding is an essential and unchanging part of the case-or-controversy requirement."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  Three elements are required to establish standing: (1) the plaintiff must have suffered an injury in fact, i.e., an invasion of a legally protected interest, which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of must be fairly traceable to the challenged action of the defendant; and (3) it must be likely that the injury will be redressed by a favorable decision.  Id.

"A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement."  Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979).  When challenging a statute, "it is sufficient for standing purposes that the plaintiff intends to engage in a course of conduct arguably affected with a constitutional interest and that there is a credible threat that the challenged provision will be invoked against the plaintiff."  Ariz. Right to Life Political Action Comm. v. Bayless, 320 F.3d 1002, 1006 (9th Cir. 2003) (internal quotations omitted & emphasis added).  That is, a plaintiff must demonstrate the challenged ordinance "would be enforced against it for engaging in activities protected by the First Amendment."

9

1   Santa Monica Food Not Bombs v. City of Santa Monica, 450 F.3d 1022, 1034 (9th Cir. 2006)

2   (emphasis added).

3          Only conduct that is inherently expressive is protected under the First Amendment.  Wong v.

4   Bush, 542 F.3d 732, 736 (9th Cir. 2008).  The First Amendment protects non-verbal conduct "so long

5   as that conduct 'convey[s] a particularized message' and is likely to be understood in the surrounding

6   circumstances."   Kaahumanu v. Hawaii, 682 F.3d 789, 798 (9th Cir. 2012) (citing   Spence v.

7   Washington, 418 U.S. 405, 409 (1974) (observing that First Amendment protects "activity . . .

8   sufficiently imbued with elements of communication")).

9          Here, it is clear that the special event permit requirement applies to Plaintiff because it intends

10   to have alcohol at its event and because it intends to require a donation, which removes it from the

11   "Expressive Activity"/"Demonstration" exception to the special event permit requirement.  Plaintiff

12   does not argue that the use of alcohol and/or requiring a donation in this instance are protected by the

13   First Amendment.  Indeed, on these facts, neither appears "sufficiently imbued with elements of

14   communication," such that they would be constitutionally protected.

15          Plaintiff is therefore required to obtain a waiver of the moratorium to hold its event.  Because

16   Plaintiff has failed to establish any nexus between the moratorium and any constitutionally protected

17   activity, Plaintiff has failed to allege facts sufficient to demonstrate it has standing to assert a facial

18   challenge to the ordinance.  Were Plaintiff not to have alcohol or require a donation at its event,

19   Plaintiff would be free to engage in what it alleges is expressive conduct without being subject to the

20   ordinance it now challenges under the First Amendment.  Accordingly, Defendant's Motion to Dismiss

21   is **GRANTED** as to Count 1 and Count 2 of Plaintiff's FAC.

22          Plaintiff states it intends to assert an as-applied challenge and should therefore be granted leave

23   to amend.  Defendant provides that, since the filing of its Motion to Dismiss, it has denied Plaintiff's

24   request for a waiver as untimely.  Defendant thus argues that leave to amend should be denied because

25   an as-applied challenge would be moot given the passage of the date on which Plaintiff desired to hold

26   its event (i.e., August 25, 2012).  Defendant further argues that, while moot issues may be resolved

27   in certain instances, allowing Plaintiff to assert an as-applied challenge in this instance would serve

28   no purpose going forward because the controversy would relate to timing, not the Constitution.

1    Defendant's point is well taken.  Still, the denial of Plaintiff's request for a waiver, the reason

2    for that denial, and any other relevant facts are not properly before this Court for purposes of deciding

3    the instant motion to dismiss.  Accordingly, the Court **GRANTS** Plaintiff's request for leave to amend

4    its First Amendment claims.

5         **B.    Fourteenth Amendment**

6         Defendant argues Plaintiff has failed to state an equal protection claim under the Fourteenth

7    Amendment because the city has a rational basis for subjecting Plaintiff's event to the summer

8    moratorium while excepting certain, long-held events from the summer moratorium.  Defendant argues

9    that a "grandfathering distinction is appropriate under long-standing Supreme Court rulings and does

10   not violate the Equal Protection Clause."

11        In response, Plaintiff argues Defendant is treating its event differently than those that have been

12   grandfathered in because of the message Plaintiff wishes to convey at its event.  That is, Plaintiff

13   asserts it "is a member of the class of persons who want to criticize Defendant's policies and

14   regulations concerning beach resources."  Plaintiff thus claims that "Defendant is allowing some

15   groups to assemble and engage in expressive activity without having to jump through any hoops, while

16   prohibiting others from doing the same thing unless they jump through those hoops."

17        In reply, Defendant observes that Plaintiff's amended equal protection allegations are no

18   different than the allegations that Judge Anello found did not state a claim.  Defendant asserts that

19   Plaintiff does not allege any facts suggesting membership in a protected class, that being a member

20   of such a class was the cause of Plaintiff's treatment, or that Defendant acted with discriminatory

21   intent. Defendant further argues that its differentiation between Plaintiff's event and the events which

22   are excepted from the summer moratorium has nothing to do with the content of any expressive

23   activity that might be conveyed at the events.  Defendant asserts the events are excepted from the

24   waiver requirement because they are "long-standing special events on which the community has come

25   to rely."

26        "The Equal Protection Clause of the Fourteenth Amendment commands that no state shall

27   'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a

28   direction that all persons similarly situated should be treated alike."  <u>City of Cleburne v. Cleburne</u>

1   Living Ctr., Inc., 473 U.S. 432, 439 (1985).

2       A section 1983 plaintiff alleging an equal protection violation must allege that (1) the
3   defendant treated plaintiff differently from others similarly situated; (2) the unequal treatment was
4   based on an impermissible classification; (3) the defendant acted with discriminatory intent in
5   applying this classification; and (4) plaintiff suffered injury as a result of the discriminatory
6   classification. Moua v. Chico, 324 F. Supp. 2d 1132, 1137 (E.D. Cal. 2004); see Barren v. Harrington,
7   152 F.3d 1193, 1194 (9th Cir. 1998) (a section 1983 plaintiff alleging denial of equal protection "must
8   show that the defendants acted with an intent or purpose to discriminate against plaintiff based on
9   membership in a protected class."); Van Pool v. S.F., 752 F. Supp. 915, 927 (N.D. Cal. 1990) (section
10  1983 plaintiff must prove purposeful discrimination by demonstrating that he "receiv[ed] different
11  treatment from that received by others similarly situated," and that the treatment complained of was
12  under color of state law).

13      With regard to classification, the Supreme Court has held that a grandfathering approach
14  designed to regulate newer businesses while excepting older business from regulation is a
15  constitutionally permissible approach to preserve the appearance and custom of a city that is both
16  valued by residents and attractive to tourists.  City of New Orleans v. Dukes, 427 U.S. 297, 305.
17  (1976).

18      Here, Plaintiff has failed to allege facts sufficient to demonstrate that Defendant's different
19  treatment of Plaintiff's event and the grandfathered events is based on an impermissible classification.
20  The different treatment of long-standing events and new events is a permissible classification.
21  Plaintiff has similarly failed to allege facts sufficient to demonstrate that Defendant acted with a
22  discriminatory intent.  While Plaintiff may be among those that criticize Defendant's policies and
23  regulations concerning beach resources, the challenged ordinance would apply even to event
24  organizers who did not criticize Defendant's policies and regulations and who wished to hold a new
25  event.  Accordingly, Defendant's Motion to Dismiss is **GRANTED** as to Count 3 of Plaintiff's FAC.

26      Further, because Plaintiff has failed for a second time to allege facts that would support an
27  equal protection claim based on Defendant's different treatment of new events and grandfathered
28  events, and because Plaintiff has failed to articulate facts that would adequately state an equal

1   protection claims, Count 3 of Plaintiff's FAC is **DISMISSED WITH PREJUDICE**.

2   **CONCLUSION**

3   After a careful consideration of the record in this matter and the parties' submissions, and for

4   the foregoing reasons, **IT IS HEREBY ORDERED** that:

5       1.    Defendant's Motion to Dismiss, (ECF No. 16), is **GRANTED**;

6       2.    Count 1 and Count 2 of Plaintiff's FAC are **DISMISSED WITH LEAVE TO**

7           **AMEND**;

8       3.    Count 3 of Plaintiff's FAC is **DISMISSED WITHOUT LEAVE TO AMEND**;

9       4.    Plaintiff shall have until **February 22, 2013,** to file a second amended complaint; and

10      5.    The hearing on Defendant's Motion to Dismiss, currently set for February 8, 2013, is

11          **VACATED**.

12  DATED:  February 7, 2013

13

14  HON. GONZALO P. CURIEL
    United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28